UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
CHERELL TILLMAN,                                :
                                                :
                              Plaintiff,        :        REPORT &
                                                :        RECOMMENDATION
                                                :
              -against-                         :        No. 21-CV-2131-DG-JRC
                                                :
                                                :
WILLIAM LOUIS and DEPUTY SHERIFF                :
JAMAL WILLIAMS,                                 :
                                                :
                              Defendants.       :
------------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

On April 15, 2021, *pro se* plaintiff Cherell Tillman ("Tillman" or "Plaintiff") commenced this action against 24 defendants pursuant to 42 U.S.C. § 1983 ("Section 1983"). *See* Compl., (Dkt. 1); *see also* Compl. Ex. A (Dkt. 1-2). Plaintiff alleged violations of her parental rights by several individuals in connection with proceedings before the Family Court of the State of New York, Kings County ("Family Court") concerning custody and visitation of her minor daughter, A.N.L. *See* Compl. at ECF pages[1] 11-13; *see also* Compl. Ex. A at ECF pages 2-5. Plaintiff also alleged an "unlawful arrest" and related injuries on July 22, 2020 by defendant Deputy Sheriff Jamal Williams ("Sheriff Williams" or "Defendant"). *See* Compl. at ECF pages 11-13; *see also* Comp. Ex. A at ECF page 4. Plaintiff further raises state law claims of defamation and slander by her former boyfriend, defendant William Louis ("Louis"). *See* Compl. at ECF page 11-13; *see also* Compl. Ex. A at ECF pages 2-5.

---

[1] References to the page numbers generated by the Court's electronic case filing system appear as "ECF page."

On July 2, 2021, the Court *sua sponte* entered an order dismissing the claims against 22 of the defendants in this lawsuit, but allowed the Section 1983 claim to proceed against Sheriff Williams and the state law claims to proceed against Louis.  *See* Mem. & Order dated July 2, 2021, Dkt. 4.  On September 21, 2021, Plaintiff commenced a similar action in New York State Supreme Court in Kings County against 24 defendants, including the defendants in this federal action.  *See* Decl. of Damian P. Gallagher ("Gallagher Decl."), Dkt. 28-1, Ex. A at ECF page 5.

On April 4, 2022, Sheriff Williams moved to dismiss the claims against him in this case pursuant to Fed. R. Civ. P. 12(b)(1) based on the *Colorado River* abstention doctrine, and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  *See generally* Sheriff Williams's Mot. to Dismiss, Dkt. 27; Mem. of Law in Support of Def. Williams's Mot. to Dismiss ("Def.'s Mem."), Dkt. 29; and supporting materials, Dkt. 28.  On April 12, 2022, Plaintiff opposed Sheriff Williams's motion.  *See* Pl.'s Aff. in Opp. to Def.'s Mot. ("Pl.'s Opp." or "Plaintiff's Opposition"), Dkt. 32.  On April 25, 2022, Sheriff Williams filed a reply in support of his motion.  *See* Reply Mem. ("Def.'s Reply"), Dkt. 33.

Currently pending before this Court, on a referral from the Honorable Diane Gujarati is Sheriff Williams's motion to dismiss.  *See* Order Referring Motion dated September 21, 2022. As set forth below, this Court respectfully recommends granting Sheriff Williams's motion to dismiss, and recommends declining to extend supplemental jurisdiction to the remaining state law claims against defendant Louis.

## Background

The following facts are drawn from the Complaint (Dkt. 1), Defendant Sheriff Williams's Memorandum of Law Support of his Motion to Dismiss (Dkt. 29), Plaintiff's Opposition (Dkt. 32), and Defendant's Reply (Dkt. 33).  In addition, the Court also considered documents

containing "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011). The documents warranting judicial notice include the case file for *Tillman v. Vargas*, *et al.*, Index No. 406/21 (N.Y. Sup. Ct.). *See* Dkt. 28-1. For purposes of Sheriff Williams's motion, the information contained in these documents together constitute facts of the case.

Plaintiff and Louis have been embroiled in a custody and visitation dispute in Family Court. *See* Compl. at ECF pages 11-13, *see also* Compl. Ex. A (Dkt. 1-2) at ECF pages 2-5. The Family Court has issued various orders governing their rights with respect to visitation and custody of their child, A.N.L. *See, e.g.*, Compl. Ex. A (Dkt. 1-2) at ECF pages 21-22, 28-30, 40, 42-44.

On July 17, 2020, Family Court Judge Javier Vargas ("Judge Vargas") issued a Writ of Habeas Corpus ("Writ") for the NYC Sheriff or NYPD to enforce ordering Plaintiff to relinquish custody of A.N.L. to Louis. *See* Compl. Ex. A (Dkt. 1-2) at ECF page 40. On or about July 22, 2020, Plaintiff allegedly received two voice messages, one from an employee with Administration for Children's Services ("ACS"), and one from Sheriff Williams, informing Plaintiff of the custody order. *See* Compl. Ex. A (Dkt. 1-2) at ECF page 4; Pl.'s Opp. (Dkt. 32) at ECF page 5. Sheriff Williams accompanied Louis to Plaintiff's residence to enforce the Writ and to take custody of A.N.L. *See* Pl. Opp. at ECF pages 3-4.

Plaintiff alleges that she was not at her apartment at the time Sherriff Williams arrived; Plaintiff was at the ACS office responding to an issue with her ongoing custody dispute. *See* Pl.'s Opp. at ECF page 3. At the ACS office, Plaintiff alleges she was first notified of the Writ. *See* Pl.'s Opp. at ECF page 3.

When Sheriff Williams arrived at the apartment, Plaintiff's mother called Plaintiff to inform her that Sheriff Williams was attempting to execute the Writ and that Sheriff Williams intended to enter the apartment to take custody of A.N.L.  *See* Pl. Opp. at ECF pages 3-4 ("I received a call from my mom . . .").  In response, Plaintiff states that she communicated over the phone -- either through her mother or directly to Sheriff Williams -- that she would "rock [Sheriff Williams's] [expletive]" if he pushed past her mother to enter the apartment.  *See* Pl. Opp. at ECF page 4.  Sheriff Williams explained that he had previously tried to contact Plaintiff, by leaving her a voice message, to establish a time for her to relinquish A.N.L. to the custody of Louis.  *See* Compl. Ex. A (Dkt. 1-2) at ECF page 4; Pl. Opp. at ECF page 5.

When Plaintiff arrived at her apartment, Sheriff Williams, who was standing in front of the apartment door, allegedly pushed Plaintiff back to prevent Plaintiff from entering the apartment.  *See* Compl. Ex. A (Dkt. 1-2) at ECF page 4 ("[T]he Sheriff pushed me and wouldn't let me go into my home . . ."); Pl. Opp. at ECF page 5 ("When I got off the elevator he proceed to put his hand on me pushing me back and stopping me from entering my home . . . ").  Plaintiff then allegedly pushed Sheriff Williams back.  *See* Pl. Opp. at ECF page 5 ("I pushed his a** right back.").  Plaintiff and Sheriff Williams allegedly pushed each other a second time.  *See* Pl. Opp. at ECF page 5 ("Then [Sheriff Williams] proceeded to do it again and I pushed his a** back again.").  Sheriff Williams then allegedly poked Plaintiff in the chest, Pl. Opp. at ECF page 5 ("[Sheriff Williams] kept poking me in my breast"), and told Plaintiff that she had been non-compliant with the Writ, Pl. Opp. at ECF page 6 ("[Sheriff Williams] said I non complied").

Sheriff Williams thereafter handcuffed Plaintiff and executed the Writ removing the child, A.N.L. from Plaintiff's custody.  *See* Compl. Ex. A (Dkt. 1-2) at ECF page 4 ("unlawfully

4

handcuffed me[,] pushed past my mom and went in my house and took my daughter"); *id*. at ECF page 40 (Writ); Pl. Opp. at ECF pages 4, 6.

Plaintiff alleges that, in effecting her arrest, Sheriff Williams bruised her arms, legs and injured both wrists, including nerve damage to her left wrist. *See* Compl. at ECF page 13 (injuries). Plaintiff further alleges that she feels numbness in her left hand and suffers from anxiety because she believes she is being followed by the police. *See* Compl. at ECF page 13.

## Legal Standards

### A.    Standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Ashcroft*, 556 U.S. at 679. Deciding whether a complaint states a plausible claim for relief is "a context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In addition, Plaintiff in this case is proceeding *pro se*. In such instances, the Court "must construe the complaint liberally and interpret the complaint to raise the strongest arguments they suggest." *Dekom v. Fannie Mae*, No. 17-cv-2712, 2019 WL 1259103, at *7 (E.D.N.Y. Feb. 26, 2019), *report and recommendation adopted*, 2019 WL 1403116 (E.D.N.Y. Mar. 28, 2019) (internal quotations omitted). Nevertheless, a *pro se* litigant is still required to state a plausible claim for relief, and "mere conclusions of law unsupported by factual averments need not be accepted." *Id.* (citing *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013); *Klos v. Bligh*, No. 13-cv-5449, 2014 WL 3778993, at *5 (E.D.N.Y. July 31, 2014)).

**B.      Standard for Claims Brought under 42 U.S.C. § 1983**

Construing Plaintiff's Complaint liberally, Plaintiff appears to assert claims for false arrest and excessive force under 42 U.S.C. § 1983. An individual can bring a lawsuit against another person who, via an aspect of state law, violates the rights of that individual. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983 (2012).

In order for a plaintiff to state a claim under Section 1983, they must assert that "(1) that the challenged conduct was 'committed by a person acting under color of state law'; and (2) that such conduct 'deprived [the plaintiff] of rights, privileges, or immunities secured by the

Constitution or laws of the United States." *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 153 (E.D.N.Y. Nov. 15, 2018) (citing *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

## Discussion

**A.    Plaintiff's False Arrest Claim**

**1.    Plaintiff Fails to State a Claim for False Arrest**

A "claim for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  In analyzing a false arrest claim, the Court looks to the law in the state where the arrest occurred.  *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004).  "Under New York law, to prevail on a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) *the confinement was not otherwise privileged*."  *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (emphasis added).

"An arrest is privileged if it is supported by probable cause, which 'is an absolute defense to a false arrest claim.'"  *Heyliger v. Peters*, 771 F. App'x 96, 97 (2d Cir. 2019) (summary order) (quoting *Jaegly*, 439 F.3d at 152); *see also Palmer v. City of New York*, 564 F. Supp. 3d 221, 245 (E.D.N.Y. 2021).

"Where an officer makes an arrest without a warrant, the presumption arises that the plaintiff's arrest was unlawful." *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) (citing *Broughton v. State*, 335 N.E.2d 310, 315 (N.Y.1975)).  "However, this presumption is rebutted if, applying the reasonable, prudent person test, the arresting officer, acting in good faith, had reasonable cause for believing the person to be arrested to have committed [a felony]."

*Id.* (quoting *Dillard v. City of Syracuse*, 51 A.D.2d 432, 435 (N.Y. App. Div. 1976) (quotation marks omitted)).  "A defendant bears the burden of raising and proving the existence of probable cause for a plaintiff's arrest." *Frederick v. City of New York*, No. 13-cv-897, 2016 WL 8711395, at *12 (E.D.N.Y. Mar. 25, 2016) (citing *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010); *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003)).

Probable cause exists when an officer "ha[d] knowledge or reasonably trustworthy information of facts and circumstances that [would be] sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852.  When assessing probable cause, courts view "the totality of the circumstances" and consider the "facts available to the officer at the time of the arrest and immediately before it." *Caldarola v. Calabrese*, 298 F.3d 156, 162, 166 (2d Cir. 2002) (quotations marks and citations omitted).  Probable cause can still exist even if "based upon mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (1983)).  Probable cause is assessed on an objective basis.  *See Whren v. United States*, 517 U.S. 806, 812-13 (1996); *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007).

While the defense of probable cause is "normally asserted in an answer," *Silver v. Kuehbeck*, 217 F. App'x 18, 22 (2d Cir. 2007), dismissal may be warranted "on a pre-answer motion to dismiss where probable cause appears on the face of the complaint, in that facts admitted in the complaint establish each of the elements of the crime" for which the plaintiff was arrested.  *See Frederick*, 2016 WL 8711395, at *12 (quoting *Silver*, 217 F. App'x at 22)

(quotation marks omitted and alterations adopted); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (probable cause may be demonstrated by facts admitted in the complaint).

In *Silver*, the Second Circuit reviewed the District Court's decision granting a motion to dismiss a false arrest claim and found that the complaint "on its face support[ed] a finding" that the officer had probable cause to arrest plaintiff because the "undisputed facts clearly establish[ed] the elements of aggravated harassment," the crime for which plaintiff had been arrested. *See Silver*, 217 F. App'x at 22.

Plaintiff's Complaint in this matter, even accepting the facts which she alleges as true, does not "plausibly give rise to an entitlement to relief" under *Iqbal* to sustain a false arrest claim. *See Iqbal*, 556 U.S. at 678. To meet the standard set out by *Iqbal* for false arrest, Plaintiff would have to sufficiently assert that Sheriff Williams arrested her without probable cause. *See Weyant*, 101 F.3d at 852.

The allegations as currently plead in Plaintiff's Complaint do not provide a sufficient factual basis to conclude that Sheriff Williams arrested Plaintiff without probable cause. Plaintiff alleges that Sheriff Williams went to her apartment to take custody of her child in the course of his official duties as Sheriff and pursuant to the Writ ordered by Judge Vargas. *See* Compl. Ex. A (Dkt. 1-2) at ECF page 40. Prior to Plaintiff's arrival at her apartment, Plaintiff acknowledges threatening to "rock [Sheriff Williams's] [expletive]" if he pushed past her mother to enter the apartment in order to execute the Writ. *See* Pl. Opp. at ECF page 4. When she arrived at the apartment, Plaintiff alleges that Sheriff Williams pushed her to prevent her from entering the apartment and that she, in turn, pushed him back. *See* Compl. Ex. A (Dkt. 1-2) at ECF page 4; *id*. at ECF pages 59, 61 (Sheriff Williams "prevented me from entering my home. He put his hand on me and pushed me back. . . . I proceeded to push[] his hand back and out my

face. . . ."); Pl. Opp. at ECF page 5.  Sheriff Williams and Plaintiff allegedly pushed each other a second time.  *See* Pl. Opp. at ECF page 5.  There are no allegations in the Complaint as to the amount of force either party used with respect to each push.  Sheriff Williams, thereafter, arrested Plaintiff and placed her in handcuffs to allow him to execute the Writ without further interference from Plaintiff.  *See* Compl. Ex. A (Dkt. 1-2) at ECF page 4.

Even construing Plaintiff's Complaint liberally, Plaintiff fails to allege that Sheriff Williams acted without probable cause in placing Plaintiff under arrest while he executed the Writ.  New York Penal Code § 195.05 states as follows:

> A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference . . . .

New York Penal Code § 195.05 (obstructing governmental administration in the second degree).

"The elements of the offense are: 1) intent; 2) obstruction or impairment of a government function, or preventing or attempting to prevent the performance of that function by 3) physical interference." *Esmont v. City of New York*, 371 F. Supp. 2d 202, 210 (E.D.N.Y. 2005) (citing *People v. Stumpp,* 129 Misc.2d 703, 493 N.Y.S.2d 679, 680 (1985)).  An officer acting under this statute requires "objectively reasonable" evidence of an individual's intent to obstruct them. *See Bey v. Antoine*, No. 19-cv-1877 2021 WL 3725985, at *6 (E.D.N.Y. Aug. 23, 2021).  Based on the facts alleged in Plaintiff's Complaint, there is "sufficient factual matter" to find that Sheriff Williams acted with probable cause when he arrested Plaintiff, pursuant to New York Penal Code § 195.05.

According to the Writ, signed by Judge Vargas and attached to Plaintiff's Complaint, Plaintiff had "wrongfully and unlawfully detained" the child, A.N.L.  *See* Compl. Ex. A (Dkt. 1-

2) at ECF page 40.  The Writ also required that the child "be produced by [Plaintiff] to the child's father, William Louis."  *Id*.  Further, the Writ stated that "NYPD/Sheriff Department are ordered to enforce this Writ and Order of Custody to the Father."  *Id*.  The Writ serves the purpose of an "official function," that also authorized Sheriff Williams to enter Plaintiff's home to take custody of the child.  *See, e.g.*, *Shaheed v. Kroski*, 833 F. App'x 868, 870-71 (2d Cir. 2020) (summary order) (noting that "New York Family Court orders provide an independent basis for police officers to enter peoples' homes," so officers entering a home under such an order are "'performing an official function.'").

Plaintiff was aware of the Writ when she arrived at her apartment.  Plaintiff had made clear that she would not voluntarily allow Sheriff Williams to execute the Writ.  *See* Pl. Opp. at ECF pages 5-6.  Plaintiff allegedly received multiple voicemails (on her mother's phone but of which Plaintiff admits she was aware), one "from a woman and the other from Deputy Sheriff Jamal Williams," informing her that she was required by law to relinquish custody of A.N.L. to defendant Louis.  *See* Pl. Opp. at ECF page 5.  Additionally, while visiting ACS in response to the voicemail from her mother's phone, Plaintiff "received this paper of a writ."  Pl. Opp. at ECF page at 3 (quotation marks and underlining omitted).  Plaintiff also alleges that Plaintiff's mother spoke to her after Plaintiff left the ACS office, informing Plaintiff that Sheriff Williams was at her apartment to take custody of A.N.L.  *See* Pl. Opp. at ECF pages 3-4.  Plaintiff alleges that she spoke to Sheriff Williams on the phone -- either directly or through her mother -- and stated that if Sheriff Williams pushed passed Plaintiff's mother to enter the apartment, she would "rock [Sheriff Williams's] [expletive]."  Pl. Opp. at ECF page at 4.  This statement, in which Plaintiff allegedly threatened Sheriff Williams if he continued in his official duties to take custody of the child, and her subsequent conduct, confirms her intent to obstruct Sheriff Williams in the

11

performance on his official duties.  Plaintiff's conduct satisfies the first prong of New York

Penal Code § 195.05.  *See Esmont*, 371 F. Supp. 2d at 210.

When Plaintiff arrived at her apartment, she alleges that Sheriff Williams had inserted

himself into her apartment door.  *See* Compl. Ex. A (Dkt. 1-2) at ECF page 59 ("by the time I got

home the Sheriff was already at my door with his hand and foot holding it wide open"); Pl. Opp.

at ECF page 5.  Plaintiff then alleges that Sheriff Williams "proceeded to put his hands on [her]

pushing [her] back and stopping [her] from entering [her] home."  Pl. Opp. at ECF page 5;

Compl. Ex. A (Dkt. 1-2) at ECF page 4 ("Sheriff pushed me and wouldn't let me go into my

home"); Compl. Ex. A (Dkt. 1-2) at ECF pages 59, 61 ("he prevented me from entering my

home").  Based on the facts as presented by Plaintiff, Plaintiff allegedly sought to enter her

apartment to prevent Sheriff Williams from "performing his government function" (*i.e.*,

executing the Writ).  *See Esmont*, 371 F. Supp. 2d at 210.  Further, after Sheriff Williams pushed

her, Plaintiff then "pushed [Sheriff Williams] right back."  Pl. Opp. at ECF page 5; Compl. Ex. A

(Dkt. 1-2) at ECF page 61 ("He put his hands on me [and] pushed me back . . . I proceeded to

push[] his hand back").  When Sheriff Williams pushed Plaintiff again, she "pushed [him] back

again."  Pl. Opp. at ECF page 5.

Plaintiff's attempt to enter her apartment, efforts to obstruct Sheriff Williams from

executing the Writ, and her decision to push Sheriff Williams constituted "physical interference,"

satisfying the second and third prongs of New York Penal Code § 195.05.  *See Esmont*, 371 F.

Supp. 2d at 210.  It was at this point that Sheriff Williams arrested Plaintiff.  *See* Compl. Ex. A

(Dkt. 1-2) at ECF page 4 ("unlawfully handcuffed me[,] pushed past my mom and went in my

home and took my daughter").  Plaintiff had violated New York Penal Code § 195.05, and

Sheriff Williams had probable cause to arrest Plaintiff.

Plaintiff similarly violated New York Penal Code § 215.50(3) and this violation could serve as another independent basis for her arrest.  New York Penal Code § 215.50(3) states as follows:

> A person is guilty of criminal contempt in the second degree when he engages in . . .
>
> (3) Intentional disobedience or resistance to the lawful process or other mandate of a court except in cases involving or growing out of labor disputes as defined by subdivision two of section seven hundred fifty-three-a of the judiciary law…

New York Penal Code § 215.50(3) (criminal contempt in the second degree).

"To establish the crime of criminal contempt in the second degree pursuant to Penal Law § 215.50(3) there must exist a lawful order of a court clearly expressing an unequivocal mandate, and there must be an intentional violation of the order.  Thus, the defendant must have known of the order and the defendant's 'conscious objective' must have been to violate the order." *Williams v. Suffolk Cnty.*, 284 F. Supp. 3d 275, 286 (E.D.N.Y. 2018) (citing *People v. Williams*, 696 N.Y.S.2d 369, 370 (N.Y. Crim. Ct. 1999)).

Based on the facts alleged in Plaintiff's Complaint, Plaintiff makes clear that she was aware of the Writ by the time she arrived at the apartment, she did not intend to comply voluntarily with the Writ, and she intended to prevent Sheriff Williams from executing the Writ. *See* Compl. Ex. A at ECF pages 4, 59, 61; Pl. Opp. at ECF pages 3-4.  Sheriff Williams had probable cause to believe that Plaintiff also had violated New York Penal Code § 215.50(3).  *See Rheingold v. Harrison Town Police Dep't*, 568 F. Supp. 2d 384, 392 (S.D.N.Y. 2008) ("it was objectively reasonable, as a matter of law, for [defendant] to believe that plaintiff [willfully] disobeyed a valid court order, and therefore there was probable cause to arrest him.").

Accordingly, based on these alleged facts as set forth in the Complaint, Sheriff Williams had probable cause to arrest Plaintiff.  Accepting Plaintiff's alleged facts as true, Plaintiff's threat

against Sheriff Williams over the telephone prior to arriving at her apartment, Plaintiff's awareness of the Writ, and Plaintiff's attempt to interfere with Sheriff Williams's ability to execute the Writ at her apartment all support the finding that Sheriff Williams had an "objectively reasonable" basis for believing that Plaintiff intended to obstruct him in the performance of his government function (*i.e.*, executing the Writ).  Plaintiff admittedly intended to prevent Sheriff Williams from executing the Writ and obtaining custody of A.N.L.  These facts together establish a basis for finding that Sheriff Williams had probable cause to arrest her.

Even accepting Plaintiff's allegations in the Complaint as true, Sheriff Williams acted with probable cause, and Plaintiff's false arrest claim cannot "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678.  Accordingly, this Court respectfully recommends dismissing Plaintiff's false arrest claim against Sheriff Williams for failure to state a claim.

### 2.    In the Alternative, Sheriff Williams is Entitled to Qualified Immunity

Sheriff Williams seeks, in the alternative, qualified immunity for Plaintiff's false arrest claim on the grounds that he had arguable probable cause for the arrest.  *See* Def.'s Mem. at 12-14.

"Governmental actors, including police officers, enjoy qualified immunity from suit for constitutional violations under 42 U.S.C. § 1983." *Guan v. City of New York*, No. 18-cv-2417, 2020 WL 6688855, at *13 (S.D.N.Y. Sept. 18, 2020) (quoting *Myers v. Patterson*, 819 F.3d 625, 633 (2d Cir. 2016)).  The Supreme Court has established a two-part test to determine whether a district court should find that qualified immunity bars a suit against government officials:  (1) first, the court must consider whether the facts alleged, when taken in the light most favorable to the party asserting the injury, demonstrate a violation of a constitutional right; and (2) second, the court must then consider whether the officials' actions violated "clearly established statutory

or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "Even assuming a state official violates a plaintiff's constitutional rights, the official is protected nonetheless if he objectively and reasonably believed that he was acting lawfully." *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004).

As to the false arrest claim, qualified immunity protects a law enforcement officer "so long as he had 'arguable probable cause' to arrest, which 'exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).  A defendant may establish arguable probable cause where, "in light of the facts known to police at the time of [plaintiff's] arrest, an officer of reasonable competence could have concluded that the arrest was justified by probable cause." *Figueroa v. Mazza*, 825 F.3d 90, 99 (2d Cir. 2016) (internal quotation marks omitted); *Cabral v. City of New York*, 662 F. App'x 11, 13 (2d Cir. 2016) (summary order) (finding officers entitled to qualified immunity for a false arrest claim even though it was unclear whether evidence obtained through an unlawful search could be considered as probable cause for an arrest).  Qualified immunity can be established at the pleading stage.  *See Garcia v. Does*, 779 F.3d 84, 97 (2d Cir. 2015) ("The Supreme Court has made clear that qualified immunity can be established by the facts alleged in a complaint.").

For the reasons stated above, given that this Court finds that Sheriff Williams had probable cause to arrest Plaintiff for interfering with his ability to execute the Writ, this Court also finds, in the alternative for purposes of qualified immunity, that Sheriff Williams had at least arguable probable cause to arrest Plaintiff.

Even assuming Sheriff Williams's arrest of Plaintiff was not supported by probable cause, based on Plaintiff's active interference in Sheriff Williams's efforts to execute the Writ and to take custody of A.N.L., Sheriff Williams's arrest of Plaintiff was supported by arguable probable cause.  The Complaint allegations establish that before she arrived at the apartment, Plaintiff threatened Sheriff Williams if he attempted to take custody of A.N.L., and that she was aware of the Writ,  At the apartment, Plaintiff alleges that Sheriff Williams pushed her to prevent her from entering the apartment and she admits she pushed him back.  Plaintiff made it clear to Sheriff Williams that she refused to comply voluntarily with the Writ and refused to voluntarily turn over A.N.L.

Based on these facts, it was objectively reasonable under the circumstances for Sheriff Williams to believe that Plaintiff was actively interfering with his ability to execute the Writ and to take custody of A.N.L.  Accordingly, Sheriff Williams is entitled to qualified immunity, which is an alternative basis to dismiss Plaintiff's false arrest claim, since Sheriff Williams, in fact, did have probable cause to arrest Plaintiff.  *See Vallen v. Connelly*, No. 99-cv-9947, 2004 WL 555698, at *10 (S.D.N.Y. Mar. 19, 2004); *Burdick v. Johnson*, No. 06-cv-1465, 2009, WL 1707475, at *7 (N.D.N.Y. June 17, 2009).

### B.      Plaintiff Fails to State a Claim for Excessive Force

The Fourth Amendment, which guarantees the right to be free from unreasonable seizures, prohibits police officers from using excessive force in effecting an arrest.  *See Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  To assess whether the force used was excessive, Courts apply an objective reasonableness standard.  *Id.* (quoting *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005)); *Nimely v. City of New York*, 414 F.3d 381, 390 (2d Cir. 2005) (excessive force claims

16

require showing that defendant's actions were "objectively unreasonable in light of the facts and circumstances confronting [defendant]") (citation omitted). "[T]he inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96 (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

Courts consider the following factors when assessing whether the force used was reasonable: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect pose[d] an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham*, 490 U.S. at 396; *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006)). The Court applies this analysis recognizing that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.

The record is viewed "from the perspective of a reasonable officer on the scene," allowing for "the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Tracy*, 623 F.3d at 96 (citations omitted). Further, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a[n] [individual's] constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). "A *de minimis* use of force will rarely suffice to state a constitutional claim." *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir. 1993).

Courts may grant motions to dismiss an excessive force claim where the force used was objectively reasonable as a matter of law. *See Pelt v. City of New York*, No. 11-cv-5633, 2013 WL 4647500, at *13 (E.D.N.Y. Aug. 28, 2013) (dismissing excessive force claim where plaintiff

17

alleged only that officers made verbal threats, which fails to support an excessive force claim). However, "courts are rarely able to assess the reasonableness of the force used at the motion to dismiss stage." *Hester-Bey v. Ford*, No. 13-cv-4656, 2015 WL 4910576, at *3 (E.D.N.Y. Aug. 13, 2015).

Alternatively, Courts grant motions to dismiss an excessive force claim where the complaint is entirely devoid of factual allegations. *See Stretching v. Schlosser*, No. 12-cv-8129, 2014 WL 1797687, at *6 (S.D.N.Y. May 6, 2014) (dismissing excessive force claim where plaintiff failed to allege "when, where, or under what circumstances the incident (or incidents) arose"); *see also Lyman v. City of Albany*, 536 F. Supp. 2d 242, 249 (N.D.N.Y. 2008) (dismissing excessive force claim where plaintiff only alleged that "excessive force was used" when plaintiff was arrested).

Here, the factual allegations regarding the circumstances of Sheriff Williams's alleged excessive use of force are extremely thin. As currently plead, Plaintiff fails to offer "sufficient factual matter" under *Iqbal* to satisfy her excessive force claim. *See Iqbal*, 556 U.S. at 678.

Plaintiff does not allege any specific use of excessive force by Sheriff Williams, reasonable or not, in connection with her arrest that rises to the level of a constitutional violation. Specifically, Plaintiff fails to allege the type or degree of force used. Plaintiff has not described the nature of the excessive force used against her, which prevents this Court from assessing whether Plaintiff has adequately plead the lack of objective reasonableness. For example, the Court has no information about the amount of force used or when force was allegedly used. This Court "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

In terms of describing the incident that occurred, Plaintiff alleges that Sheriff Williams pushed her twice.  However, Plaintiff does not allege that any of the pushes were "excessive." Plaintiff's vague statement that she was pushed on two occasions hardly suggests that she was subjected to a more serious assault, but in any event, it is devoid of context relevant to determining objective reasonableness.  *See Lopez v. City of New York*, No. 05-cv-10321, 2009 WL 229956, at *8 (S.D.N.Y. Jan. 30, 2009) (a slap "does not rise to the level of a constitutional violation"); *Johnson*, 481 F.2d at 1033 ("[n]ot every push or shove" rises to the level of a constitutional violation).

Plaintiff alleges the following injuries as a result of her arrest:  bruises on her arms and legs, numbness in her left hand, and anxiety from the police entering her home.  *See* Compl. at ECF page 13.  Plaintiff fails to explain how she allegedly received the injuries, whether they were caused by the two pushes by Sheriff Williams or were related to her being handcuffed. While the alleged physical injuries presumably resulted from Sheriff Williams placing handcuffs on her, the Complaint sets forth no factual basis for the conclusion that Sheriff Williams employed unreasonable force resulting in these alleged injuries.  Plaintiff does not allege that the use of handcuffs was unreasonable under the circumstances, nor does Plaintiff allege that Sheriff Williams handcuffed her with excessive tightness or for an unreasonably long period of time. *Cf. Cugini v. City of New York*, 941 F.3d 604, 613-14 (2d Cir. 2019) (plaintiff had a valid claim for excessive force where police continued "to tighten plaintiff's handcuffs after she expressed physical pain and using force strong enough to cause permanent injury" after plaintiff had voluntarily surrendered).  Without a factual allegation that Sheriff Williams acted unreasonably to cause these injuries, simply listing her injuries is insufficient to establish an excessive force claim.

Without more, this Court cannot find that Plaintiff plausibly states a claim for excessive

force in violation of her constitutional rights against Sheriff Williams.  For these reasons, this

Court respectfully recommends granting Sheriff Williams's motion to dismiss Plaintiff's

excessive force claim.

If Plaintiff does seek to allege a claim for excessive force, she shall amend the complaint

clearly stating the cause of action, the facts supporting the cause of action, and the defendant

against whom she alleges the claim.

### C.    *Colorado River* Abstention

Defendant claims this Court lacks jurisdiction pursuant to Rule 12(b)(1) on the basis of

the *Colorado River* abstention doctrine.  *See* Def.'s Mem. at 12.  The *Colorado River* abstention

doctrine derives from *Colorado River Water Conservation District v. United States*, 424 U.S.

800 (1976).  In *Colorado River*, the Court held that pendent state court proceedings could

warrant federal court abstention, but only under "exceptional circumstances."  *Id.* at 818.  To

determine whether a case warrants such circumstances requires a two-prong inquiry.  First, there

must be "parallel" federal and state court suits.  *See Windward Bora, LLC v. Bank of N.Y.*

*Mellon*, No. 19-cv-858, 2020 WL 7042761 (E.D.N.Y Nov. 30, 2020).  For the cases to be

"parallel" means that "parties are substantially the same, litigating substantially the same issues

in both actions."  *Royal & Sun Alliance Ins. Co. of Canada v. Cent. Inter. Arms, Inc.*, 466 F.3d

88, 94 (2d Cir. 2006).

Second, the Court applies a six-factor test to determine if abstention is appropriate.[2]  *See*

*Kingsway Fin. Servs. v. Pricewaterhouse-Coopers LLP*, 420 F. Supp. 2d 228, 232 (citing *Village*

---

[2] Courts consider the following six factors to determine if abstention is appropriate pursuant to
the *Colorado River* abstention doctrine:  (1) the assumption of jurisdiction by either court over
any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal

of *Westfield v. Welch's*, 170 F.3d 116, 121 (2d Cir. 1999)).  In this assessment, "the balance [is] heavily weighted in favor of the exercise of jurisdiction."  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).  Concomitant to this, when a factor is neutral, it should be automatically construed to favor jurisdiction.  *See Woodford*, 239 F.3d at 522.

The  Court in *Windward Bora* set forth the standard for evaluating a motion to dismiss under the *Colorado River* abstention doctrine, as follows:

> A motion to dismiss based on the *Colorado River* abstention doctrine is assessed under the same standard as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  *United States v. Blake*, 942 F. Supp. 2d 285, 292 (E.D.N.Y. 2013) (citing *City of New York v. Milhem Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 341-42 (E.D.N.Y. 2008)).  This standard is "essentially identical to the Fed. R. Civ. P. 12(b)(6) standard," *id.*, under which the court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citing *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Windward Bora*, 2020 WL 7042761, at *2.

For the *Colorado River* abstention doctrine to apply, there must be an identifiable parallel state action "litigating substantially the same issues" as this lawsuit.  *See generally Windward Bora,* 2020 WL 7042761, at *3; *Royal & Sun Alliance Ins.*, 466 F.3d at 94.

Sheriff Williams argues that this Court should take judicial notice of Plaintiff's state court action in *Tillman v. Vargas*, *et. al.*, Index No. 406/21 (N.Y. Sup. Ct.).  *See* Def.'s Mem. at

---

litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the parties seeking to invoke federal jurisdiction.  *See Woodford v. Community Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir. 2001).

5.  Sheriff Williams further argues that this state court action constitutes a "parallel state court suit" under *Colorado River*.  *See* Def.'s Mem. at 5-6.

A review of the state court docket reveals that the most recent rulings were filed last summer.  On June 8, 2022, Judge Richard Velazquez ("Judge Velazquez"), in response to Plaintiff's motion seeking the return of her daughter with full and sole custody, denied Plaintiff's motion noting that the motion was not filed in the "correct forum" and the relief requested "should be made in Family Court . . . ."  In a subsequent Order to Show Cause dated July 18, 2022, Judge Velasquez noted the following:  "This is not the proper venue.  Custody cases are heard in Family Court, not this Court.  You cannot file this here in this Court.  You must file in Family Court.  This Court cannot hear Family Court matters."  It does not appear any further action has occurred in the state court action.  According to the state court docket sheet, the Note of Issue was due on September 21, 2022, and it does not appear any party has filed the Note of Issue.

Notwithstanding the lack of any recent activity in the state court action and the failure of any party to file a Note of Issue by the September 2022 deadline, this Court need not address the abstention argument in light of the recommendation that Plaintiff's federal claims be dismissed for failure to state a claim.

### D.    This Court Should Decline to Extend Supplemental Jurisdiction to Plaintiff's State Law Claims Against Defendant Louis

This Court respectfully recommends that the Court decline to exercise supplemental jurisdiction over the remaining state law claims against defendant Louis.  Title 28, United States Code, Section 1367(a) provides, in relevant part, that

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to

claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Courts may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Courts 'consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise' supplemental jurisdiction." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 117-18 (2d Cir. 2013) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7.

This case fits within "the usual case" described in *Cohill*. A district court "particularly abuses its discretion when it retains jurisdiction over state-law claims raising unsettled questions of law following dismissal of all original-jurisdiction claims." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 124 (2d Cir. 2006). Here, because this Court respectfully recommends dismissal of Plaintiff's federal claims at this early stage of the action, principles of judicial economy and comity heavily favor declining to retain jurisdiction over any state law claims against defendant Louis. *See, e.g., Wilkins v. Willner*, No. 22-cv-02215, 2022 WL 1004191, at *4 (S.D.N.Y. Apr. 4, 2022).

### Conclusion

For the foregoing reasons, this Court respectfully recommends **granting** the motion to dismiss Plaintiff's claims against Sheriff Williams for failure to state a claim upon which relief can be granted. In addition, this Court respectfully recommends declining to retain jurisdiction over the remaining state law claims against defendant Louis.

23

Any objections to the recommendations made in this Report must be filed with the Honorable Judge Diane Gujarati within 14 days after the filing of this Report and Recommendation and, in any event, on or before **March 9, 2023**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

The Clerk's Office is directed to enter this Report and Recommendation into the ECF system and to serve a copy upon the *pro se* Plaintiff by first-class mail.

**SO ORDERED**

Dated:  Brooklyn, New York
        February 23, 2023

s/ James R. Cho
James R. Cho
United States Magistrate Judge

24